IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MICHELLE ROBINSON**                                                          **PLAINTIFF**

v.                              Case No. 3:22-cv-00219-LPR

**DAVID LUCAS**
*Sheriff, Jackson County Jail*                                                 **DEFENDANT**

## ORDER

In this case, Plaintiff Michelle Robinson—who was formerly in the custody of the Jackson County Detention Center—brought suit against (1) several Jackson County Detention Center employees in their official capacities only,[1] and (2) Sheriff David Lucas in both his official capacity and personal capacity.[2] The heart of her lawsuit was the Defendants' (alleged) deliberate indifference to Ms. Robinson's (alleged) serious medical needs.[3] Pursuant to the Prison Litigation Reform Act, the Court screened out all of the official capacity claims.[4] So the only claim left for the Court to adjudicate is the section 1983 personal-capacity medical indifference claim against Sheriff Lucas.[5]

Today, the Court resolves that final claim by GRANTING Defendant Lucas's Motion for Summary Judgment in its entirety.[6] On the record before the Court, no reasonable jury could conclude that Sheriff Lucas was deliberately indifferent to Ms. Robinson's serious medical needs.

---

[1] *See* Compl. (Doc. 1) at 3, 4–5, 7 (checking the "official capacity only" line for former Defendants Huddleston, Clark, and Sisque).

[2] *See id.* at 5–6 (checking the "official capacity only," "personal capacity only," and "both official capacity and personal capacity" lines for Defendant Lucas).

[3] *See id.* at 11.

[4] *See* Order (Doc. 9) at 1–2, 4–6.

[5] *See* 42 U.S.C. § 1983.

[6] Doc. 35.

Simply stated, there are no material, genuinely disputed facts and Sheriff Lucas is entitled to judgment as a matter of law.[7]

As a threshold matter, because Ms. Robinson did not properly dispute any part of Defendant's Statement of Undisputed Material Facts, Defendant's entire Statement is deemed admitted.[8] In any event, there is no evidence in the record that Sheriff Lucas knew Ms. Robinson had a serious medical need, that he was deliberately indifferent to that need, or that his deliberate indifference caused harm to Ms. Robinson.

With respect to the asserted six-hour delay (on or around August 9, 2022) in attending to Ms. Robinson after she suffered a stroke, there is simply no evidence that Sheriff Lucas knew Ms. Robinson had suffered a stroke—or even that Ms. Robinson was suffering any distress—at any point in the relevant time period. The evidence in the record instead indicates that Sheriff Lucas was never informed of such things.[9] Without knowledge of the stroke or the resulting medical

---

[7] *See* Fed. R. Civ. P. 56(a) (Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[8] Pursuant to the Final Scheduling Order operative at the time of all filings related to the instant Motion, all submissions were to "comply with [Federal Rule of Civil Procedure] 56 and Local Rules 7.2 and 56.1." Doc. 20 at 2. Local Rule 56.1(a) provides that "[a]ny party moving for summary judgment . . . shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried." Sheriff Lucas complied with this requirement. *See* Def.'s Statement of Undisputed Material Facts (Doc. 37). Local Rule 56.1(b) provides that "[i]f the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried." Ms. Robinson, the non-moving party in the context of the instant Motion, complied with this requirement by filing her own Statement of Undisputed Material Facts. *See* Pl.'s Statement of Undisputed Material Facts (Doc. 47). The problem for Ms. Robinson lies in Local Rule 56.1(c). This rule provides that "[a]ll material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." In other words, any statement of fact made in Defendant's Statement of Undisputed Material Facts that was not specifically controverted in Plaintiff's Statement of Undisputed Material Facts is deemed to have been admitted by Ms. Robinson. And Ms. Robinson's statement does not specifically controvert any of the material facts set forth in Sheriff Lucas's statement. *Compare* Pl.'s Statement of Undisputed Material Facts (Doc. 47), *with* Def.'s Statement of Undisputed Material Facts (Doc. 37). So, per Local Rule 56.1(c), Ms. Robinson is deemed to have admitted all of the facts contained in Defendant's Statement of Undisputed Material Facts.

[9] *See* Decl. of David Lucas (Doc. 35-2) ¶ 8.

distress, Sheriff Lucas cannot be tagged with personal liability for any delay in attending to Ms. Robinson following the stroke.

With respect to the treatment (or lack of treatment) of Ms. Robinson's ailments prior to August 9, 2022, the record reveals that Sheriff Lucas knew something of those ailments. Exactly how much he knew (and when he knew it) is not clear from this record. But we can glean a little bit of information.

- On July 12, 2022, Ms. Robinson grieved that she "wants to talk to David Lucas or Shane Rogers" because she "can't seem to get an appointment with [her] heart doctor . . . ."[10] That grievance was printed out for the Sheriff, and it was noted that "[t]he nurse has called AR-care" and that AR-care would "call when they get [her] an [appointment]."[11]

- Later that same day, Ms. Robinson filed a second, more specific grievance.[12] She grieved that she had "been trying to get some medical attention for the last three weeks," that she has "a serious heart condition and just recently had a cardioversion on [her] heart," that she is "on some very serious medications and some other medications that are not meant to be long term medications due to severe side effects," that she had "been put on this medication due to life threatening [arrythmia] in [her] heart," that "[i]t seems that the medical staff has an issue with getting [her] in to see any doctor at all," that she is having "no such luck" getting "medical attention," that her "chest [has] been hurting and [she is] having severe headaches," that her "hands have been numb for at least a month," and that the medical team is "scared to give [her] any sort of medication due to the seriousness of [her] current lifelong medications."[13] The response to this grievance was that "the nurse and sheriff have been on top of this and [have been] talking with [her] family as well."[14]

- On July 13, 2022—the very next day—Ms. Robinson again grieved that her "chest is hurting and [she] cannot breathe," and that "[t]hey don't even come back here

---

[10] Attachment to Compl. (Doc. 1) at 16 (cleaned up). On July 3, 2022, Ms. Robinson grieved that she "[has] a serious heart condition," that her "hands are still numb and turning purple," that she had "sporadic chest pains and pitting edema," and that (although she had recently gone to AR-care) she "still [had] not gotten an appointment for the heart doctor or the neurologist and orthopedic referrals . . . ." *Id.* at 17. The July 3, 2022 grievance was "printed for the nurse." *Id.* There is no evidence that this particular grievance was shown to Sheriff Lucas. *See id.*

[11] *Id.*

[12] *Id.* at 15.

[13] *Id.*

[14] *Id.*

and [check] on [her] or anything."[15] This grievance was "printed for [the] sheriff and nurse."[16]

A jury could certainly conclude—based on the foregoing and making reasonable inferences in favor of Ms. Robinson—that, for an (unspecified) portion of time before August 9, 2022, Sheriff Lucas knew Ms. Robinson had a serious medical need. The problem for Ms. Robinson, however, is that the undisputed record shows that Sheriff Lucas did not turn a blind eye to this situation. Instead, Sheriff Lucas worked to ensure the detention center's medical team was watching and evaluating Ms. Robinson. This is the obvious import of the Sheriff's unrebutted declaration[17] and the medical call sheet attached to Ms. Robinson's Complaint.[18]

Perhaps Sheriff Lucas could have done a better job keeping tabs on what the medical staff were and weren't doing to address Ms. Robinson's medical needs, but mere negligence is insufficient to establish an Eighth Amendment deliberate-indifference claim.[19] Knowing that the medical staff were cognizant of and responding to Ms. Robinson's complaints regarding her ailments, Sheriff Lucas's reliance on the judgment of the medical staff was not deliberately indifferent.[20] And, even if we assume it was, Ms. Robinson has not provided any caselaw to show that such a proposition was clearly established at any level of specificity (let alone a sufficiently

---

[15] *Id.* at 13.

[16] *Id.*

[17] *See* Decl. of David Lucas (Doc. 35-2) ¶ 6, 7, 10, 12–14.

[18] *See* Attachment to Compl. (Doc. 1) 19–20.

[19] *See Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997). Similarly, perhaps the prison's medical staff was negligent—or even deliberately indifferent—in how it responded (or delayed in responding) to Ms. Robinson's ailments. But Ms. Robinson did not sue those persons in their personal capacities. And any negligence on the part of the medical staff cannot be imputed to Sheriff Lucas in his individual capacity because "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)).

[20] *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).

specific level) at the time of Sheriff Lucas's purported acts or omissions such that he would not be entitled to qualified immunity.[21]

Given the foregoing, it should come as no surprise that Ms. Robinson herself agreed that she sued Sheriff Lucas "because he has general responsibility of the jail."[22] She explained that the nurses "being under his authority, they should take care of you."[23] And she could not say that anything Sheriff Lucas did or did not do caused her harm or long-term effects.[24] This is not the stuff of section 1983 personal liability. Bottom line: although Ms. Robinson's concern about her jailhouse experience is understandable, her claim against Sheriff Lucas cannot survive summary judgment.

For the foregoing reasons, Defendant Lucas's Motion for Summary Judgment is GRANTED.[25] Judgment will be entered for Defendant David Lucas on all live claims, and this case will be CLOSED.

IT IS SO ORDERED this 26th day of February 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[21] *See Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019). Sheriff Lucas is entitled to qualified immunity unless (1) he has violated a constitutional right, and (2) the unlawfulness of his conduct was clearly established at the time the conduct occurred. *Id*. To be "clearly established," the unlawfulness must be established by controlling authority or a strong consensus of persuasive authority. *Id*. And this standard "requires that a particular rule's contours be well defined at a high degree of specificity." *Id*. (internal citations and quotations omitted).

[22] Ex. A (Dep. of Michelle Robinson) to Def.'s Mot. for Summ. J. (Doc. 35-1) at 25.

[23] *Id.* at 30.

[24] *Id.* at 30–31.

[25] Doc. 35.